## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **Athena Bitcoin, Inc.**, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No:     1:24-cv-5985 |
| | ) | |
| **Genesis Coin, Inc.**, **Bitcoin ATM, LLC**, | ) | |
| **ATM OPS, Inc**., **Kiosk Distributors, Inc.**, | ) | |
| **Andrew C. Barnard**, **Douglas O. Carrillo**, | ) | |
| and **Neil Hernandez**, | ) | |
| | ) | |
| *Defendants*. | | |

## COMPLAINT

Athena Bitcoin, Inc. ("Athena" or "Plaintiff"), through its counsel, brings the underlying lawsuit for, *inter alia*, violations of the Computer Fraud and Abuse Act, as codified at 18 U.S.C. 1030, *et seq*. Plaintiff is seeking damages from Defendants Genesis Coin, Inc. ("Genesis"), Bitcoin ATM, LLC, ATM OPS, Inc., Kiosk Distributors, Inc., Andrew C. Barnard, Douglas O. Carrillo, and Neil Hernandez (collectively, "Defendants") for their unlawful intrusion into its computer systems, theft of its assets, and Defendant's interference with its use of the Entropy ATM management software (the "Entropy Software") and theft of its transaction, customer, and compliance data ("Data") while attempting to extort a cash payment for access to the same. Athena is also seeking injunctive relief which would require Genesis to restore Athena's access to the Entropy software, return Athena's Data, and prohibit Genesis from further interfering with Athena's access to its assets, its Data, and the Entropy Software. In support of its Complaint, Athena alleges as follows:

1

## INTRODUCTION

Athena is a cryptocurrency services company famous for its network of Bitcoin ATMs ("ATM") which allow users to buy and sell Bitcoin with and for cash. Founded in 2015, Athena's goal is to bring Bitcoin and financial inclusion to traditionally underserved markets, allowing anyone to purchase Bitcoin securely and with physical cash. From its first ATM in St. Louis, Missouri Athena has deployed ATMs in over 30 states and across Latin America. In 2021, Athena deployed more than 200 ATMs in El Salvador and is the principal vendor of Bitcoin and ATMs to the El Salvadorian government.

Athena's relationship with Genesis began at the company's inception. Genesis's founder and former president, Mr. Evan Rose, developed the first Bitcoin ATM software, the Entropy Software, and in October of 2015, Genesis began to supply Athena with the physical ATMs and the Entropy Software to operate them. In January 2023, Mr. Rose sold 80% or the majority stake in Genesis to its current owners, Andrew C. Barnard ("Barnard") and Douglas O. Carrillo ("Carrillo"), and shortly thereafter the companies relations began to sour.

In or around January 2023 Barnard contacted Athena's CEO, Matias Goldenhörn ("Matias"), to brag about how Genesis had hiked its license fees, and otherwise made the exit of one of its subscribers difficult after Barnard had discovered its intent to partially terminate its relationship with Genesis – the competitor had secured another service provider but left approximately 1,000 kiosks on the Genesis platform. At the same time, Barnard and Matias were discussing a renegotiation of Athena's existing License Fee but were unable to come to an agreement about the specific terms. Sensing the possibility of calamity if Athena remained dependent upon the Entropy Software, Athena began to develop its own internal Bitcoin ATM

2

software and in May of 2024, began to gradually deploy the same to its more than 2,400 ATMs throughout the United States and abroad.

When Genesis discovered that Athena had begun to remove their ATMs from its platform it stole Athena's Bitcoin, locked Athena out of the Entropy Software, and absconding with its Data – data from its customers, from each of its transactions, and data necessary to comply with various state, federal and foreign regulators. On June 4, 2024 at 20:08:09 UTC, Genesis initiated the first of four separate transactions whereby it would steal Ƀ9.5 Bitcoin (as an asset/currency, "Ƀ"). Genesis simultaneously began to interfere with Athena's access to the Entropy Software, software which controlled its network of ATMs; and Genesis blocked access to / stole its Data, data which is required to meet Athena's ongoing regulatory requirements as a global financial institution.

## THE PARTIES

1.　　Plaintiff Athena Bitcoin, Inc., is a Delaware corporation registered to do business in, *inter alia*, Illinois and Florida.

2.　　Athena is a Money Services Business and is registered with the United States Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN"), pursuant to 31 C.F.R. Ch. X, Part 1022.

3.　　Athena is a Financial Institution as defined at 31 C.F.R. § 1010.100(t).

4.　　Defendant Genesis Coin, Inc. ("Genesis"), is a Delaware corporation registered to do business in Florida. It has a principal place of business at 1541 Sunset Drive, Suite 202, Coral Gables, Florida 33143.

5.　　Defendant Bitcoin ATM, LLC ("Bitcoin ATM"), is a Florida company. It has a principal place of business at 18117 Biscayne Boulevard, Suite 2206, Aventura, Florida 33160.

6.     Defendant ATM OPS, Inc. ("Bitstop"), is a Delaware company registered to do business in Florida.  It does business under the assumed name of Bitstop and has a principal place of business at 1541 Sunset Drive, Suite 202, Coral Gables, Florida 33143.

7.     Defendant Kiosk Distributors, Inc. ("KDI"), is a Delaware company registered to do business in Florida.  It has a principal place of business at 1541 Sunset Drive, Suite 202, Coral Gables, Florida 33143.

8.     Andrew C. Barnard is a citizen of Florida who resides in the same state.  He is a corporate officer for Defendant Genesis Coin, Inc., ATM OPS, Inc., and Kiosk Distributors, Inc.

9.     Douglas O. Carrillo is a citizen of Florida who resides in the same state.  He is a corporate officer for Defendant Genesis Coin, Inc., ATM OPS, Inc., and Kiosk Distributors, Inc.

10.     Neil Hernandez is a citizen of Florida who resides in the same state.  He is the Chief Technology Officer for Defendant Genesis Coin, Inc.

<u>**JURISDICTION AND VENUE**</u>

11.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Plaintiff alleges numerous violations of a federal statute: 18 U.S.C. § 1030, the Computer Fraud and Abuse Act.

12.     The Court has supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1367, because such claims arise out of the same common set of operative facts and conduct as Plaintiff's federal claims.

13.     The Court has personal jurisdiction over Defendants because each of the Defendants have done and currently do business within the Northern District of Illinois and importantly numerous transactions which were impacted by Defendants' violations of the Computer Fraud and Abuse Act occurred within the Northern District of Illinois.

4

14.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in this District – specifically, numerous transactions which were impacted by Defendants' violations of the Computer Fraud and Abuse Act occurred within the Northern District of Illinois.

## COMPUTER FRAUD AND ABUSE ACT

15.     The Computer Fraud and Abuse Act of 1986 (the "CFAA"), as codified at 18 U.S.C. § 1030, *et seq.*, was originally passed in response to the hacker hysteria that arose surrounding the advent of personal computers, the internet, and sci-fi films like "the motion picture 'War Games' [which] showed a realistic representation of the automatic dialing and access capabilities of the personal computer[.]" H.R. Rep. 98-894, 10, 1984 U.S.C.C.A.N. 3689, 3696.

16.     The CFAA created criminal liability for an individual or entity that accessed a protected computer without authorization or exceeded its authorization to the same.  18 U.S.C. § 1030, *passim*.  Criminal liability arose from, *inter alia*:

    a.  "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing]-- (A) information contained in a financial record of a financial institution, or of a card issuer as defined in section 1602(n) of title 15, or contained in a file of a consumer reporting agency on a consumer, as such terms are defined in the Fair Credit Reporting Act" Id., at § 1030(a)(2)(A);

    b.  "knowingly and with intent to defraud, access[ing] a protected computer without authorization, or exceed[ing] authorized access, and by means of such conduct further[ing] the intended fraud and obtain[ing] anything of value…" Id., at § 1030(a)(4);

c. "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, recklessly cause[ing] damage" Id., at § 1030(a)(5)(B);

d. "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, caus[ing] damage and loss[,]" Id., at § 1030(a)(5)(C); and

e. "inten[ding] to extort from any person any money or other thing of value, transmit[ting] in interstate or foreign commerce any communication containing any- - (A) threat to cause damage to a protected computer;… or (C) demand or request for money or other thing of value in relation to damage to a protected computer, where such damage was caused to facilitate the extortion" Id., at §§ 1030(a)(7)(A), (C).

17. The CFAA defines a "protected computer" as:

"a computer—(A) exclusively for the use of a financial institution…, or, in the case of a computer not exclusively for such use, used by or for a financial institution… and the conduct constituting the offense affects that use by or for the financial institution…; [or] (B) which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States[.]"

18 U.S.C. §§ 1030(e)(2)(A), (B).

18. Importantly, the CFAA also created a civil remedy whereby "[a]ny person who suffers damage or loss by reason of a violation of [the CFAA] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).

## BITCOIN

19.     Bitcoin is a system for decentralized digital value exchange that is designed to enable units of bitcoin to be transferred internationally and domestically without the need for an intermediary or currency conversion.  Bitcoin is not legal tender, except in the country of El Salvador.

20.     The supply of bitcoin is not determined by any central government or independent entity, rather by an open-source software program that limits both the total amount of bitcoin that will be produced and the rate at which it is released into the network.

21.     The responsibility for maintaining the official ledger of who owns which bitcoin and for validating new bitcoin transactions is not entrusted to any single central entity. Instead, it is distributed among the network's participants. As such, crypto assets are transferred entirely online, with no physical coins or bills.

22.     Instead of being transferred through banks, brokers, clearing houses, custodians, or payment processors crypto assets are transferred directly to the recipient online and transactions are recorded on a blockchain or public ledger.  Instead of being held at a bank, crypto assets are stored in one's digital wallet, which is an online vault for holding public and private keys to exercise control over crypto assets.

23.     A 'wallet' when used in the context of Bitcoin is a place to store public and private keys for controlling crypto assets.  Wallets are typically software, hardware, or paper-based.

24.     When used in the context of Bitcoin, a 'public key' or 'private key' each have a public address and a corresponding public key and private key that are cryptographically generated.  A private key allows the recipient to access any funds belonging to the address, similar to a bank account password.  A public key helps validate transactions that are broadcast to and

7

from the address.  Addresses are shortened versions of public keys, which are derived from private keys.

## ATHENA BITCOIN

25.     Athena was founded on September 18, 2015, as a Delaware corporation with a principal place of business at 211 W. Wacker St., Suite 900B, Chicago, Illinois 60606.  Its first ATM was located in St. Louis, Missouri.

26.     Since around 2018 Athena started expanding operations, installing more ATMs in, *among other places*, Florida and Texas.

27.     On April 13, 2023, Athena signed an agreement to acquire additional Bitcoin ATMs in multiple states that it has an existing network of machines and in new states including Colorado, Indiana, Massachusetts, New Jersey, Oklahoma, Arizona, Kentucky, Kansas, and Tennessee with the potential to acquire additional machines and locations in the future.  On November 2, 2023, Athena entered into an Equipment Financing Agreement which modified the sublease into a purchase and financing agreement with additional financing agreements for purchase of ATMs executed in December 2023 and February 2024.

28.     As of September 30, 2023, Athena had 1,378 Bitcoin ATMs in the United States, including more than 140 in the greater Chicagoland area; 14 Bitcoin ATMs in El Salvador; 12 Bitcoin ATMs in Argentina; 1 Bitcoin ATM in Mexico; and 17 Bitcoin ATMs in Colombia.  At the time of filing this Complaint, Athena had more than 3,000 ATMs across 5 countries.

29.     Athena's ATMs are free standing kiosks that allow customers to exchange their physical currency for crypto assets.  Customers can buy and sell Bitcoin using Athena Bitcoin ATMs - either spending or receiving physical currency (cash).

8

30.     Athena's ATMs are located in various strategic locations and hold themselves out, like traditional automatic teller machines, for the public to use.  Each of Athena's ATMs is connected to the Internet as is the Entropy Software which is used to, *inter alia*, manage and administer the ATMs.

31.     To use one of Athena's ATMs, a user would approach the ATM and select one of two preset range of Bitcoin to purchase; thereafter a user has their identity verified via a one-time PIN code sent to their cell phone; from there the customer would enter their cash into the Athena ATM and identify the address of their Bitcoin wallet where they want their Bitcoin deposited.

32.     Athena only holds a limited number of Bitcoin in its wallet to handle transactions as they occur.  Once the transactions are initiated and Bitcoins are designated for payment if its total pushes the amount of Bitcoin held by Athena below a threshold amount, then Athena's wallet management software goes out into the market and purchases additional Bitcoin as needed to replenish its wallet to cover future transactions.  This is done continuously throughout the day.

33.     Athena's transaction reconciliation program also employs a batching function whereby multiple transactions from the same user and to the same wallet are batched – *i.e.*: when one user makes multiple transactions in quick succession those transactions are bundled together and paid out in a single outgoing payment.

34.     Athena's ATMs each holds out a unilateral contract whereby any member of the public can accept Athena's offer to sell Bitcoin by depositing cash into one of its ATMs.

35.     Additionally, Athena played a significant role in a foreign government's ("Foreign Government") decision to adopt Bitcoin as the country's legal tender in September 2021, including installing a network of its ATMs across the county.

9

36.     In August 2021, in collaboration with the Foreign Government, Athena launched the Foreign Government's Digital Economic System ("Eco-System"), a Foreign Government-backed digital wallet for Bitcoin transactions.

37.     As of January 12, 2024, Athena operates 249 ATMs on behalf of the Foreign Government's Eco-System (the "Eco-System ATMs").

## THE *GENESIS* OF THE RELATIONSHIP

38.     On October 1, 2015, Athena Bitcoin, Inc. entered into that certain Genesis Coin, Inc. Purchase and Sale Agreement with Genesis Coin, Inc. (the "Agreement"), attached hereto as Exhibit A.

39.     The Agreement provided for, *inter alia*, the sale of 2 Genesis1 Kiosks ("Kiosks") and laid out the payment, delivery, and warranty terms.  The Agreement also provided a license to certain software.  Id., *passim*.

40.     The Agreement's "Software" section "Grant[ed] to [Athena] a LIMITED, NONEXCLUSIVE LICENSE and/or SUBLICENSE (hereinafter 'License') to use the software identified in Exhibit A hereof (hereinafter 'Software') in connection with the sale of [Kiosks]." Id., at § 7 (*emphasis in original*).

41.     The Agreement's Exhibit A further defined 'Software' as: "Software License and Access to Operating Backend[,]" Id., at p. 8; this "Software" is the Entropy Software which, *inter alia*, controls the client facing and back-office functions of Athena's ATMs.

42.     The client facing functions of the Entropy Software are the controls for the ATMs themselves, they permit a client to log into their wallet, deposit cash, and convert that cash to Bitcoin stored in their wallet.

43.     The back-office functions of the Entropy Software allow Athena to monitor their network of ATMs, ensure that transactions are being resolved, control and disable individual ATMs if there is a safety or security concern, and collect the date required as a Money Services Business and vendor to the Foreign Government.

44.     The Agreement continues to set: a "License Fee" equal to "one percent (1%) of the value of all transactions processed by [Athena, and s]uch fees shall be assessed in Bitcoin, deducted automatically and transferred automatically to [Genesis]," Id., at § 7(A); prohibits Athena from transferring its license to the Entropy Software, Id., at § 7(B); provides for "[s]tandard software updates", which shall "remain free for life[,]" Id., at § 7(C); and importantly, a "Term" which "shall commence upon delivery of the [Kiosks] to [Athena] and shall continue for as long as [Athena] retains full legal right and title to operate the [Kiosks]." Id., at § 7(C).

45.     Thereafter, Athena and Genesis entered into the Oral Purchase And Sale Agreement Between Genesis Coin Inc. And Athena Bitcoin, Inc. (the "Oral Agreement"), whereby:

> Each of [Athena] and [Genesis] acknowledge that since executing the [Agreement], [Athena] has purchased additional [K]iosks from Genesis at prevailing commercial prices based on the terms set forth in the Agreement. The main terms covered in the Agreement include payment terms, software license and associated fee, service level, and general warranty. This is verbal understanding between [Athena] and [Genesis] that has existed since executing the Agreement in October 2015.
>
> Additionally, each of [Athena] and [Genesis] agree that future purchases will continue to adhere to prevailing commercial pricing subject to market conditions and the terms set forth in the Agreement.

Oral Purchase And Sale Agreement Between Genesis Coin Inc And Athena Bitcoin, Inc., attached hereto as Exhibit B.

46.     After the Oral Agreement, Genesis and Athena never executed or otherwise entered into any subsequent agreement which purports to govern the purchase or sale of ATMs or the License for the Entropy Software.

47.     During the course of Athena's relationship with Genesis, Genesis's License Fee was automatically deducted from Athena's Entropy Wallet and paid to Genesis.  These transactions typically occurred daily.

48.     The only authorization to withdrawal Bitcoin Athena ever granted to Genesis was for the automatic deduction of the Licensing Fee.  Athena never authorized Genesis to remove Bitcoin from its wallet for any other purposes.

49.     These transactions were initiated by Genesis and the License Fee was sent to various wallets owned by Genesis.

50.     One such wallet owned by Genesis and used to collect the License Fee from Athena was bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.  See June 4, 2024 Incident Report, attached hereto as Exhibit C.

51.     The wallet owned by Genesis with the address of bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg was used to collect the License Fee in, among other times, June 2023.

52.     The wallet owned by Genesis with the address of bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg was also used to collect the License Fee from the Eco-System ATMs in June 2023 and as recently as June 4, 2024.

53.     In late 2022 or early 2023, Mr. Evan Rose, the then President and CEO of Genesis sold the majority of his interest in Genesis to Barnard and Carrillo.

54.     Barnard assumed the role as Chief Executive Officer and Carrillo Assumed the role or Chief Strategy Officer with Mr. Rose remaining as a member of the company's Board of Directors and a technical advisor.

**ATHENA'S EXODUS**

55.     Thereafter, beginning around January 2023 Barnard contacted Matias to attempt to renegotiate the License Fee.

56.     In early January 2023, Matias and Barnard discussed Matias's desire to lower the License Fee for Athena in lieu of Athena finding a less expensive software provider.

57.     On January 14, 2023, Barnard sent an e-mail to Matias ("Proposed Amendment E-Mail") with the subject: "Genesiscoin Proposal Amendment to Athena/[Eco-System] Licensing Agreement[,]" attached hereto as Group Exhibit D, which stated: "Please consider this email as a proposal amendment to the existing licensing agreement between Genesiscoin and Athena Bitcoin ATM and [Eco-System]."

58.     The Proposed Amendment E-mail continued on to propose various terms, including, *inter alia*: "an immediate and temporary reduction in the Genesis Coin licensing fee from 1% to 0.5% for Athena[;]" a guarantee that "[e]ven after Athena/[Eco-System] replaces all machines with Genesis Coin machines, Athena/[Eco-System] promises to only use Genesiscoin enabled Bitcoin ATMs for any new installs in the future[;]" "Athena/[Eco-System] agrees to use Genesis Coin exclusively as their software provider across all machines worldwide[;]" and "Athena/[Eco-System] understands that this amendment can be revoked or renegoatied (sic) at anytime by Genesiscoin for any reason."

59.     Barnard closed the Proposed Amendment E-Mail with: "Please respond with **'I agree'** so we can proceed accordingly. Thank you." (*emphasis in original*).

60.     Rather than accept Genesis's terms, on January 16, 2023, Matias sent a response to the Proposed Amendment E-Mail wherein he proposed revised terms – a counter proposal. January 16, 2023 E-Mail attached hereto as Group Exhibit D.

61. Thereafter, on January 17, 2023 Barnard sent his final e-mail agreeing to some terms but closing the e-mail "We will do our very best to work together and there will be no blindsiding. We will talk through any sort of changes or renegotiations." January 17, 2023 E-Mail attached hereto as Group Exhibit D.

62. There were no subsequent negotiations following the January 17, 2023 E-mail.

63. Neither Genesis nor Athena reduced the terms discussed in the Proposed Amendment E-Mail, the January 16, 2023 E-mail, or the January 17, 2023 E-mail to writing and no written contract was ever executed amending either the Agreement or the Oral Agreement.

64. Thereafter, in February 2023, Genesis reduced the License Fee of the Eco-System ATMs but failed to reduce the License fee of the Athena ATMs.

65. To the contrary, in or around April 2023, the License fee of the Athena ATMs was raised to 1.25%, a .25% increase over the License Fee articulated in the Agreement and re-acknowledged in the Oral Agreement rather than a .5% reduction as would be expected if Athena and Genesis had entered into an amendment licensing agreement.

66. At the same time that Genesis was attempting to renegotiate the License Fee, Barnard contacted Matias to brag about the financial hardship Genesis had inflicted on another of its customers who had expressed interest in terminating their relationship with Genesis.

67. Barnard bragged that he, through Genesis, had dramatically increased the license fee of Bitcoin Depot, another of its customers, when he discovered it had extended its operations to include another service provider but left approximately 1,000 kiosks on the Genesis platform.

68. Barnard's bragging was evidence that he and Genesis intended to breach the Agreement and raise the License Fee is Athena ever used a different service provider or attempted to leave Genesis's platform.

14

69.     On May 24, 2024, Athena was ready to deploy its alternative to the Entropy Software, Athena's Exodus Software ("Exodus"), and began to deploy Exodus onto its network of ATMs.

70.     Athena worked with several equipment and logistical management companies to replace the Entropy Software and by June 1, 2024, Athena had replaced the Entropy Software with Exodus on approximately 500 of its ATMs in the United States.

71.     The update of all Athena ATMs within the United States would be completed on approximately June 13, 2024.

72.     On June 4, 2024, Athena began to replace the Entropy Software on the Eco-System ATMs.  All Eco-System ATMs were successfully converted to Exodus by June 6, 2024.

73.     On June 10, 2024, Athena began the process of replacing the Entropy Software on its ATMs within Mexico, Argentina, and Colombia with its Exodus software.

### GENESIS STEALS ATHENA'S BITCOIN

74.     By June 4, 2024, Genesis had discovered that Athena was abandoning its Entropy Software in favor of its own solution and had implemented a scheme to steal Athena's Bitcoin.

75.     Upon information and belief, Barnard and Carrillo as officers and directors of Bitcoin ATM, Bitstop, and KDI (together with Genesis, the "Company Defendants"), colluded with Genesis to steal Athena's Bitcoin and interfere with Athena's business in an effort to force Athena to surrender its inventory of ATMs (the "Scheme").

76.     Upon information and belief, the Scheme was an effort by the Company Defendants to advance their market position, assume control of Athena's ATMs, and excise the third party which had previously supplied Athena with its ATMs.  If the Scheme was successful, the Company Defendants would have divided Athena's business operations among themselves.

77.     Barnard and Carrillo ordered Neil Hernandez ("Hernandez"), Genesis's Chief Technology Officer, to remove Athena's Bitcoin from Athena's Entropy Software wallet and transfer the same to Genesis's wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg, a wallet previously used to collect the License Fee.

78.     In order to avoid discovery of its theft of Athena's Bitcoin, Genesis, Barnard, Carrillo, and Hernandez instigated 23 separate and distinct transactions for either ₿0.1 or ₿0.5 in rapid succession to avoid emptying Athena's Bitcoin wallet and allow Athena's wallet maintenance program to re-fill Athena's wallet after each transaction.

79.     This process allowed Genesis to steal ₿9.5 over the course of approximately 90 minutes by taking advantage of Athena's wallet management software which consistently re-filled its wallet and resolved the transactions in batches once all the Bitcoin was available.

80.     On the evening of June 4, 2024, Athena's corporate officers noticed that there was unusual activity occurring on the Entropy Software and Matias contacted Juan Diaz ("Diaz"), Athena's LATAM Director and asked him to investigate the activity.

81.     Diaz noticed that there was a discrepancy between the Bitcoin balance reported by the Entropy Software and Athena's wallet management dashboard which facilitated automatic purchased of Bitcoin and transfers into the Entropy Software wallet.[1]

82.     Within 30 minutes of Diaz logging into the Entropy Software and attempting to determine the cause of the unusual activity, Athena's wallet management dashboard reflected a negative balance while the Entropy Software wallet was still showing a positive balance.

---

1.   In order to satisfy client demand and ensure the timely resolution of all transactions, Athena utilizes a wallet management application to monitor the balance of its Entropy Software wallet and, when necessary, purchase and deposit Bitcoin into the same.

83. The discrepancy between Athena's wallet management dashboard and the Entropy Software led Diaz to suspect that the Entropy Software had been tampered with and was not accurately reporting Athena's balance of Bitcoin in the Entropy Software wallet; a suspicion proven when Diaz discovered four separate unauthorized outgoing transactions of Bitcoin from Athena's Entropy Wallet to Genesis's wallet.

84. On June 4, 2024 at 20:08:09 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred ₿0.5, the first of 23 unauthorized and coordinated transfers, from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

85. Athena's ₿0.5 had a cash value of approximately $34,402.28 USD at the time of transfer.

86. The June 4, 2024 at 20:08:09 UTC transfer of ₿0.5 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis. Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

87. On June 4, 2024 at 20:09:57 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred ₿0.5 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

88. Athena's ₿0.5 had a cash value of approximately $34,402.28 USD at the time of transfer.

89.     The June 4, 2024 at 20:09:57 UTC transfer of ₿0.5 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis.  Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

90.     On June 4, 2024 at 20:19:03 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred ₿0.1 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

91.     Athena's ₿0.1 had a cash value of approximately $6,880.45 USD at the time of transfer.

92.     The June 4, 2024 at 20:19:03UTC transfer of ₿0.1 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis.  Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

93.     On June 4, 2024 at 20:19:30 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred ₿0.1 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

94.     Athena's ₿0.1 had a cash value of approximately $6,880.45 USD at the time of transfer.

95.     The June 4, 2024 at 20:19:30 UTC transfer of ₿0.1 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of

its Bitcoin from its wallet to a wallet belonging to Genesis. Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

96.     On June 4, 2024 at 20:20:47 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred ₿0.1 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

97.     Athena's ₿0.1 had a cash value of approximately $6,880.45 USD at the time of transfer.

98.     The June 4, 2024 at 20:20:47 UTC transfer of ₿0.1 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis. Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

99.     On June 4, 2024 at 20:37:07 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred ₿0.5 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

100.     Athena's ₿0.5 had a cash value of approximately $34,402.28 USD at the time of transfer.

101.     The June 4, 2024 at 20:37:07 UTC transfer of ₿0.5 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis. Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

102.    On June 4, 2024 at 20:37:23 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred ฿0.5 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

103.    Athena's ฿0.5 had a cash value of approximately $34,402.28 USD at the time of transfer.

104.    The June 4, 2024 at 20:37:23 UTC transfer of ฿0.5 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis.  Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

105.    On June 4, 2024 at 20:38:14 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred ฿0.5 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

106.    Athena's ฿0.5 had a cash value of approximately $34,402.28 USD at the time of transfer.

107.    The June 4, 2024 at 20:38:14 UTC transfer of ฿0.5 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis.  Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

108.    On June 4, 2024 at 20:38:16 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated

Bitcoin wallet and transferred ₿0.5 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

109.    Athena's ₿0.5 had a cash value of approximately $34,402.28 USD at the time of transfer.

110.    The June 4, 2024 at 20:38:16 UTC transfer of ₿0.5 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis.  Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

111.    On June 4, 2024 at 20:38:38 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred ₿0.1 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

112.    Athena's ₿0.1 had a cash value of approximately $6,880.45 USD at the time of transfer.

113.    The June 4, 2024 at 20:38:38 UTC transfer of ₿0.1 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis.  Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

114.    On June 4, 2024 at 20:38:41 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred ₿0.1 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

115. Athena's Ƀ0.1 had a cash value of approximately $6,880.45 USD at the time of transfer.

116. The June 4, 2024 at 20:38:41 UTC transfer of Ƀ0.1 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis. Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

117. On June 4, 2024 at 20:52:27 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred Ƀ0.5 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

118. Athena's Ƀ0.5 had a cash value of approximately $34,402.28 USD at the time of transfer.

119. The June 4, 2024 at 20:52:27 UTC transfer of Ƀ0.5 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis. Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

120. On June 4, 2024 at 20:52:49 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred Ƀ0.5 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

121. Athena's Ƀ0.5 had a cash value of approximately $34,402.28 USD at the time of transfer.

122.     The June 4, 2024 at 20:52:49 UTC transfer of ฿0.5 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis.  Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

123.     On June 4, 2024 at 20:53:13 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred ฿0.5 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

124.     Athena's ฿0.5 had a cash value of approximately $34,402.28 USD at the time of transfer.

125.     The June 4, 2024 at 20:53:13 UTC transfer of ฿0.5 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis.  Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

126.     On June 4, 2024 at 21:02:33 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred ฿0.5 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

127.     Athena's ฿0.5 had a cash value of approximately $34,402.28 USD at the time of transfer.

128.     The June 4, 2024 at 21:02:33 UTC transfer of ฿0.5 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of

its Bitcoin from its wallet to a wallet belonging to Genesis. Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

129. On June 4, 2024 at 21:02:53 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred ₿0.5 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

130. Athena's ₿0.5 had a cash value of approximately $34,402.28 USD at the time of transfer.

131. The June 4, 2024 at 21:02:53 UTC transfer of ₿0.5 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis. Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

132. On June 4, 2024 at 21:03:06 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred ₿0.5 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

133. Athena's ₿0.5 had a cash value of approximately $34,402.28 USD at the time of transfer.

134. The June 4, 2024 at 21:03:06 UTC transfer of ₿0.5 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis. Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

135. On June 4, 2024 at 21:03:09 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred ฿0.5 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

136. Athena's ฿0.5 had a cash value of approximately $34,402.28 USD at the time of transfer.

137. The June 4, 2024 at 21:03:09 UTC transfer of ฿0.5 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis. Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

138. On June 4, 2024 at 21:03:12 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred ฿0.5 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

139. Athena's ฿0.5 had a cash value of approximately $34,402.28 USD at the time of transfer.

140. The June 4, 2024 at 21:03:12 UTC transfer of ฿0.5 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis. Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

141. On June 4, 2024 at 21:03:14 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated

Bitcoin wallet and transferred ₿0.5 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

142.    Athena's ₿0.5 had a cash value of approximately $34,402.28 USD at the time of transfer.

143.    The June 4, 2024 at 21:03:14 UTC transfer of ₿0.5 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis.  Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

144.    On June 4, 2024 at 21:36:55 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred ₿0.5 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

145.    Athena's ₿0.5 had a cash value of approximately $34,402.28 USD at the time of transfer.

146.    The June 4, 2024 at 21:36:55 UTC transfer of ₿0.5 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis.  Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

147.    On June 4, 2024 at 21:37:29 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred ₿0.5 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

148.     Athena's Ḇ0.5 had a cash value of approximately $34,402.28 USD at the time of transfer.

149.     The June 4, 2024 at 21:37:29 UTC transfer of Ḇ0.5 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis.  Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

150.     On June 4, 2024 at 21:37:56 UTC, at the direction of Barnard and Carillo and acting on behalf of Genesis, Hernandez accessed Athena's Entropy Software account and the associated Bitcoin wallet and transferred Ḇ.5, the last of 23 unauthorized transactions, from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg.

151.     Athena's Ḇ0.5 had a cash value of approximately $34,402.28 USD at the time of transfer.

152.     The June 4, 2024 at 21:37:56 UTC transfer of Ḇ0.5 was not in satisfaction of any License Fee due and neither Athena nor any of its officers or directors authorized the transfer of its Bitcoin from its wallet to a wallet belonging to Genesis.  Instead, this transfer was the result of Genesis's fraudulent manipulation of Athena's wallet, a protected computer system.

153.     On June 4, 2024 at 23:22:59 UTC, the Entropy Software automatically deducted and transferred Ḇ0.04626835 from Athena's Entropy Software wallet to Genesis's wallet, a wallet with the address: bc1q06sy8sld9l4q0khkj8q05v9gcwnj4w8u56rvjq.

154.     Athena's Ḇ0.04626835 had a cash value of $3,263.66 USD at the time of transfer.

155.     The June 4, 2024 at 23:22:59 UTC transfer of Ḇ0.04626835 **was** in satisfaction of the License Fee due and **was** duly authorized by Athena.

156.     Neither Athena nor any of its officers or directors have ever authorized Genesis to transfer any of its Bitcoin, beyond those Bitcoin paid for the Licensing Fee.

157.     By way of comparison, the unauthorized transfers of Bitcoin from Athena's wallet to one of Genesis's wallets is akin to a subscription service with autopay enabled making numerous payments to itself from its client's bank account.  *For e.g.*: If a law firm initially subscribed to LexisNexis for its research requirements and permitted LexisNexis to auto-debit its monthly subscription fees from its operating account such payment would be analogous to the Licensing Fee here.  Now, if the law firm determined that WestLaw would provide better research services and was in the process of transitioning its attorneys from one provider to the other, such transition is analogous to the transition from the Entropy Software to Exodus here.  Finally, if upon discovering the law firm was switching service providers, LexisNexis initiated dozens of discrete transactions to empty the law firm's operating account and hold its fund hostage unless the law firm agreed to turn over a huge sum of cash and/or submit to an unreasonable and onerous contract, such conduct would be analogous to the events here.

158.     As a result, of these unauthorized transfers, Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin and violations of the CFAA.

159.     Athena was never alerted nor advised by Genesis that it was planning to effectuate four transactions whereby they would steal and transfer approximately ₿9.5 from Athena's Entropy Software wallet to Genesis's own wallet.

160.     Athena's ₿9.5 had a cash value of more than $670,000 USD at the time of transfer.

161. The Entropy Software never alerted Athena that Athena's Bitcoin were being withdrawn and transferred from its account to another account.

162. When Matias ordered one of Athena's employees to transfer its Bitcoin from its Entropy Software wallet to another of Athena's Bitcoin wallets, they discovered that its Bitcoin were no longer in its account however the Entropy Software still reflected a pre-transfer balance of approximately ₿1.

163. As further evidence of its true intentions, Genesis tampered with the Entropy Software so that the Entropy Software would not alert Athena to the transfer of its Bitcoin, and Entropy would still reflect a pre- transfer balance of approximately ₿1.

164. What's more, on the evening of June 4, 2024, Genesis attempted to access the Foreign Government's wallet and transfer the government's Bitcoin to a wallet belonging to Genesis.

165. On June 4, 2024, at approximately 6:00 PM EST, on June 4, 2024, Diaz was contacted by his counterpart within the Foreign Government and informed that numerous transfer attempts were being made against the Eco-System ATMs.

166. Between approximately 4:40 PM EST and 9 PM EST, the Foreign Government recorded a total of 73 withdrawal attempts to withdraw Bitcoin from the Eco-System ATMs.

167. Each of the 73 withdrawal attempts was for ₿0.1 and had a cash value of $7,200.00 USD at the time of the attempted transfer.

168. Each of the 73 withdrawal attempts was for ₿0.1 and attempted to transfer the Bitcoin to Genesis's wallet with an address of: bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg, a wallet previously used to collect the License Fee.

169.    Fortunately, the dual controls implemented by Athena and the Foreign Government meant that Genesis's attempts to steal the government's Bitcoin were thwarted.

170.    Thereafter, Diaz prepared a report, the June 4, 2024 Incident Report, for Matias and Athena documenting the transfers and the recipient's public key address used in the theft of Athena's Bitcoin as well as the attempts to steal Bitcoin from the Eco-System ATMs.  Exhibit C. A complete register of the attempted fraudulent transactions on the Eco-System ATMs, the Eco-System Transaction Register is attached hereto as Exhibit E.

171.    By 10:30 PM EST on June 4, 2024 Athena had been blocked from accessing the Entropy Software's backend.

172.    Once Athena had been blocked from access to the Entropy Software's back-office, it was no longer able to resolve the transactions coming in from its ATMs which were still running the Entropy Software.

173.    When Athena had lost access to the Entropy Software's back-office it also lost the ability to turn off those ATMs.  Accordingly, those ATMs were on, taking Athena's client's money, but NOT distributing Bitcoin.

174.    Numerous clients of Athena were impacted.  Specifically:

   a.    On June 4, 2024, at 12:31:06 pm CDT, Athena's customer BW deposited $10,000 in cash into Athena's ATM located at 926 N. York St., Elmhurst Illinois 60126 and initiated a transaction;

   b.    On June 4, 2024, at 3:56:56 pm CDT Athena's customer WH deposited $10,000 in cash into Athena's ATM located at 926 N. York St., Elmhurst Illinois 60126 and initiated a transaction;

     c.   On June 4, 2024, at 4:13:21 pm CDT Athens's customer KD deposited $10,000 in cash into Athena's ATM located at 789 Summit St., Elgin, Illinois 60120 and initiated a transaction;

     d.   On June 4, 2024, at 6:25:31 pm CDT Athens's customer RC deposited $40 in cash into Athena's ATM located at 4401 W. 55th St., Chicago, Illinois 60632 and initiated a transaction; and

     e.   On June 5, 2024, at 12:49:22 pm CDT Athens's customer AH deposited $1,800 in cash into Athena's ATM located at 750 N. Wells St., Chicago, Illinois 60654 and initiated a transaction.

The transactions enumerated sub-paragraphs (a) – (e) above are only a limited sample of the hundreds of transactions initiated by Athena's customers while Athena's access to the Entropy Software was being blocked and its ATMs were active (the above transactions are collectively referred to as, the "Transactions").

175.   Because of Defendants' unlawful theft of Athena's Bitcoin, Defendants' interference with Athena's access to the Entropy Software, and Defendants' tortious interference with the Transactions Athena was unable to fulfil the Transactions at that the time they were initiated.

176.   Instead, only after Genesis extorted various concessions from Athena was Athena provided the information necessary to resolve the Transactions.

177.   Since Athena gained access to the information required to resolve the Transactions it has, at its own expense, resolved each of the Transactions.

178.     Moreover, once Athena had been blocked from access to the Entropy Software's back-office, Genesis took control of its Data – data from its customers, from each of its transactions, and data necessary to comply with various state, federal and foreign regulators.

179.     While Athena was granted access for approximately 1-hour on June 5, 2024 – for minimum compliance purposes and to fulfil customer orders – each day Athena is deprived access to its Data it is suffering damage because such Data is necessary for its prospective compliance with various state, federal, and foreign regulatory requirements.

180.     In its capacity as a Money Services Business, Athena has compliance obligations to the Department of the Treasury via FinCEN, under the Bank Secrecy Act for Suspicious Activity Reports; the Internal Revenue Service for Cash Transaction Reports; the states of Georgia, Alabama, and Ohio for the maintenance of its Money Transmission Licenses; and various regulations implemented by the governments of El Salvador and Columbia.

181.     In addition to its above regulatory obligations, Athena has obligations to various City, State, and Federal law enforcement agencies to comply with criminal and civil subpoenas.

182.     Athena is still being denied access to the Entropy Software and its Data and is therefore limited in its ability to fully comply with expected compliance requirements as a Money Services Business and a vendor to the Foreign Government.

183.     As a result of the unlawful theft of Athena's Bitcoin, on June 4, 2024 at 10:51 PM EST Matias sent Barnard, Carrillo, and Mr. Rose an e-mail demanding the return of Athena's Bitcoin.  The June 4, 2024 E-mail From 10:51 PM Attached hereto as Group Exhibit F.

184.     The June 4, 2024 E-mail stated:

I am deeply concerned by the recent actions of Genesis/BitcoinATM.com/Bitstop, which have compromised Athena Bitcoin's financial integrity. Earlier today, in a series of at least three transactions, a total of 8.2 bitcoin was improperly withdrawn from the

Athena Bitcoin's hot wallet linked to our entropy account. These transactions were routed to the address bc1qp5z849ra3yxhe2marqlwnxuefuyaphr0ast3fg. … Should the funds not be returned by tomorrow at 9am EST, we will pursue immediate legal action against Genesis/BitcoinATM.com/Bitstop and hold you and your team members personally accountable for conversion in separate lawsuits.

185.     On Tuesday, June 4, 2024 11:11 PM EST, less than 30 minutes later, Barnard responded.  The June 4, 2024 E-mail From 11:11 PM Attached hereto as Group Exhibit F.

186.     In his June 4, 2024 E-mail, Barnard admitted to shutting down Athena's access to the Entropy Software and taking control of its Data.

187.     Barnard's June 4, 2024 E-mail continued to state: "[w]e haven't converted any funds in your [Eco-System] wallet nor do we plan to. We can't 'attempt to access funds' because we literally have access as part of hosting your account. You literally gave us access - we have been your software provider with access for several years."

### BARNARD AND MATIAS'S MESSAGES

188.     At the same time Athena and Genesis's CEOs were exchanging e-mails and copying their respective officers and directors, Matias and Barnard were engaging in a back-channel discussion (the "Back-Channel") wherein Matias was attempting to secure the release of Athena's funds, access to the Entropy Software, and return of Athena's Data while Barnard was pouting and throwing a temper-tantrum.

189.     The Back-Channel occurred over WhatsApp, an internet instant messaging service, it began on June 4, 2024 at approximately 10:16:05 AM EST and continued until June 5, 2024 at approximately 10:50:00 AM EST.  The entire Back-Channel is attached hereto as Exhibit G.

190.     During the Back-Channel, Barnard acknowledged that Athena was leaving Genesis's Entropy Software and transitioning its ATMs to a different platform.  Back-Channel, at

June 4, 2024 at 4:17:13 PM ("I'm fully aware you're swapping machines out to a different platform.").

191.     During the Back-Channel Matias also pleaded with Bernard to turn off Athena's ATMs that were still running the Entropy Software (to minimize the hardship visited on its customers and limit its own damages) but, Barnard was unwilling to comply, instead chiding Matias for terminating Athena's relationship with Genesis.

192.     During the Back-Channel, the following exchange occurred:

> [6/5/24, 1:44:13 PM[2]] Matias: I need to shut down all the ATMs. The US ones are taking money from consumers and not delivering btc, but we cannot make the customers whole. That's the consumer fraud part and being a regulated financial institution it going to get fun.

> [6/5/24, 1:44:20 PM] Drew Bitstop:[3] Can Finfer even represent you? Hes represented me before and currently represents me. Maybe there's a conflict? Send over your Greenberg trauig (sic) contact on the criminal thing.

> [6/5/24, 1:46:06 PM] Drew Bitstop: You have the ability to turn off your machines. Should have done that in my opinion. Never sell what you don't have - I think you guys asked us to manually turn off the Genesis restrictions to stop selling if you run out of bitcoin. That's a default setting you removed which puts you in a credit relationship with your customers. If you would like, I can turn your machines off for you. <This message was edited>[4]

> [6/5/24, 1:47:11 PM] Drew Bitstop: You should make those customers whole then. Just my advice. They are your customers, right?

> [6/5/24, 1:50:02 PM] Matias: Yes, of course but without access to entropy I can't neither shut down the atm's nor see who bought what. Hence the conondrum.

> [6/5/24, 1:50:53 PM] Drew Bitstop: That sucks. Wish we would have spoken before you broke our agreement. Would you like me to turn the machines off for you?

---

2.   All communications in the Back-Channel are EST +6
3.   Please Note, Barnard appears as "Drew Bitstop" in Back-Channel communications.
4.   Please Note, messages that conclude with "<This message was edited>" were edited by the message's sender in WhatsApp.

[6/5/24, 1:51:47 PM] Drew Bitstop: Also, happy to leave you operating for your transition as well as the [Eco-System] machines. We could work something out if you prefer

[6/5/24, 1:52:30 PM] Drew Bitstop: But I don't know if you're open to that at this point. We can work it through attorneys or together. I'm open to either.

[6/5/24, 1:53:47 PM] Drew Bitstop: Again, like you said yesterday, no hard feelings, right?

193.    Shortly thereafter, Barnard attempts to extort either a cash payment of $1.5 million

or the surrender of 330 Kiosks, Kiosks which were purchased by Taproot, a third party currently

engaged in a contract dispute with Genesis, and subsequently leased to Athena.

194.    During the Back-Channel, the following exchange occurred:

[6/5/24, 2:12:27 PM] Drew Bitstop: Look, you fired the first shots. This is a self inflicted wound. Really no one on our side has been unreasonable at any moment. I saved your company with our agreement last year. Also, the criminal stuff is nonsense. I get it that you have to kick it up a notch, but that won't go anywhere quickly. This is a civil matter where contracts exist. You will find this out from your attorneys.

For the sake of trying to resolve amicably and quickly:

1.      We need 330 of UK1's and/UK2's which were subleased to you by taproot delivered to our warehouse or 1.5M dollars. Either working machines or cash.

We can turn your machines on and allow you to operate during transition without interruption in both Athena and [Eco-System] until July 1st. We will charge a higher licensing fee % for doing so. <This message was edited>

195.    When Matias inquired about the return of Athena's illegally taken Bitcoin, Barnard

admitted to such theft when he responded:

[6/5/24, 2:23:34 PM] Drew Bitstop: Happy to send that back after delivery of property. Can escrow it with a mutual attorney.

[6/5/24, 2:24:58 PM] Drew Bitstop: You can understand that there is a slight breach of trust on both sides at the moment. So that can be escrowed

> or if you prefer, we can deduct it from the 1.5 if you want to pay for machines cash.
>
> [6/5/24, 2:25:18 PM] Drew Bitstop: If you're going to deliver the machines, we can just have attorney send it back after

196. As the Back-Channel progressed it became clear that Barnard was attempting to extort the sum he believed Taproot owed Genesis from Taproot's largest customer – Athena.

197. Under duress and the looming threat of breaching Athena's obligations to its Customers and failing to satisfy its regulatory obligations Matias made a counter proposal which stated:

> [6/5/24, 3:10:50 PM] Matias: Ok, here is the deal:
>
> A) We get back access now to entropy in US and ESV business as usual (no bitcoin grabbing), fee is 1.25 which is already over 2x what you charge RokitCoin,
>
> B) Return the bitcoin and Athena wont press charges to the extent not required to by law,
>
> C) I'll take to my Board for approval buying 300 atms,
>
> D) Normal transition until July 1st,
>
> E) If the [Board of Directors] approves the deal we buy the note (which I view favorably) we sign mutual release of claims,
>
> This unwinds the last 48hs without public scandal nor major legal bills

198. Immediately after Matias's settlement proposal Barnard made a number of incoherent statements followed by his next attempt at extorting a significant cash payment from Athena in exchange for the return of Athena's Bitcoin, the return of the Data, and access to the Entropy Software.

199. Barnard stated:

> [6/5/24, 3:14:11 PM] Drew Bitstop: Truth.
>
> [6/5/24, 3:14:29 PM] Drew Bitstop: Treachery is the highest of sins.

36

[6/5/24, 3:15:25 PM] Drew Bitstop: Your moves are without pure intent and they will taint all the progress you made and rot Athena from the inside out.

[6/5/24, 3:15:43 PM] Drew Bitstop: We can both agree on this

[6/5/24, 3:19:29 PM] Matias: Years begging for a stupid feature

[6/5/24, 3:20:31 PM] Drew Bitstop: Counter:

You get 1 day limited access to vote on a decision of the machines.

No vote: Bitcoin stays in escrow. Machines go off everywhere. We press charges for civil theft and push for treble damages allowed by the state of Florida including the profit you're making off our property.

Yes vote: machines stay on til July 1st at 5%. We send back btc upon wire to our bank of cash or of machine delivery to our warehouse. If delivery of machines, good quality and in working order. <This message was edited>

200.    The balance of the Back-Channel continues in the same vein as the above, Barnard attempts to extort a significant cash payment from Athena in exchange for the return of Athena's Bitcoin, return for its Data, and access to Athena's Entropy Software.

201.    When Matias pleaded with Barnard to restore Athena's access to the Entropy Software, Barnard admitted to Genesis severed Athena's access to the same in response to discovering Athena had replaced the Entropy Software on its ATMs with Exodus.

202.    In response to Matias's calls to restore Athena's access to the Entropy Software, Barnard stated:

[6/5/24, 4:29:59 PM] Drew Bitstop: Well then, to be clear and refresh your memory, you started taking down hundreds of your own machines. You lied when we were freaking out that there was a technical or security concern. Then when we did our own due diligence to visit a machine physically we saw you lied and swapped software and breached our agreement of exclusivity. Then we took down the remaining machines as we were completely fucking blindsighted by you. <This message was edited>

## COUNT I
### Violation of the Computer Fraud and Abuse Act

203.    Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

204.    On June 4, 2024 at 20:08:09 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

205.    Athena Bitcoin, Inc., is a financial institution.

206.    Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B) because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

207.    The June 4, 2024 at 20:08:09 UTC access and subsequent transfer of ₿0.5 was not authorized by Athena.

208.    As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

209.    Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen ₿.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

210.    As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole

following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

211.    Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

## COUNT II
### Violation of the Computer Fraud and Abuse Act

212.    Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

213.    On June 4, 2024 at 20:09:57 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

214.    Athena Bitcoin, Inc., is a financial institution.

215.    Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B) because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

216.    The June 4, 2024 at 20:09:57 UTC access and subsequent transfer of ₿0.5 was not authorized by Athena.

217.    As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

218. Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

219. As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

220. Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

## COUNT III
### Violation of the Computer Fraud and Abuse Act

221. Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

222. On June 4, 2024 at 20:19:03 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

223. Athena Bitcoin, Inc., is a financial institution.

224. Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B)

because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

225.     The June 4, 2024 at 20:19:03 UTC access and subsequent transfer of ₿0.1 was not authorized by Athena.

226.     As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.1, which had a cash value of approximately $6,880.45 USD at the time of transfer.

227.     Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen ₿0.1, which had a cash value of approximately $6,880.45 USD at the time of transfer.

228.     As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

229.     Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

## COUNT IV
## Violation of the Computer Fraud and Abuse Act

230.    Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

231.    On June 4, 2024 at 20:19:30 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

232.    Athena Bitcoin, Inc., is a financial institution.

233.    Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B) because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

234.    The June 4, 2024 at 20:19:30 UTC access and subsequent transfer of ₿0.1 was not authorized by Athena.

235.    As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.1, which had a cash value of approximately $6,880.45 USD at the time of transfer.

236.    Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen ₿0.1, which had a cash value of approximately $6,880.45 USD at the time of transfer.

237.    As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole

following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

238.    Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

## COUNT V
### Violation of the Computer Fraud and Abuse Act

239.    Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

240.    On June 4, 2024 at 20:20:47 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

241.    Athena Bitcoin, Inc., is a financial institution.

242.    Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B) because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

243.    The June 4, 2024 at 20:20:47 UTC access and subsequent transfer of ₿0.1 was not authorized by Athena.

244.    As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.1, which had a cash value of approximately $6,880.45 USD at the time of transfer.

43

245.    Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen Ƀ0.1, which had a cash value of approximately $6,880.45 USD at the time of transfer.

246.    As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

247.    Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

## COUNT VI
### Violation of the Computer Fraud and Abuse Act

248.    Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

249.    On June 4, 2024 at 20:37:07 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

250.    Athena Bitcoin, Inc., is a financial institution.

251.    Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B)

because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

252.    The June 4, 2024 at 20:37:07 UTC access and subsequent transfer of Ƀ0.5 was not authorized by Athena.

253.    As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, Ƀ0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

254.    Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen Ƀ0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

255.    As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

256.    Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

## COUNT VII
## Violation of the Computer Fraud and Abuse Act

257.    Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

258.    On June 4, 2024 at 20:37:23 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

259.    Athena Bitcoin, Inc., is a financial institution.

260.    Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B) because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

261.    The June 4, 2024 at 20:37:23 UTC access and subsequent transfer of ₿0.5 was not authorized by Athena.

262.    As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

263.    Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

264.    As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole

following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

265.    Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

<u>**COUNT VIII**</u>
**Violation of the Computer Fraud and Abuse Act**

266.    Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

267.    On June 4, 2024 at 20:38:14 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

268.    Athena Bitcoin, Inc., is a financial institution.

269.    Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B) because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" <u>Id.</u>

270.    The June 4, 2024 at 20:38:14 UTC access and subsequent transfer of ฿0.5 was not authorized by Athena.

271.    As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ฿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

272.    Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen Ƀ0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

273.    As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

274.    Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

## COUNT IX
### Violation of the Computer Fraud and Abuse Act

275.    Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

276.    On June 4, 2024 at 20:38:16 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

277.    Athena Bitcoin, Inc., is a financial institution.

278.    Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B)

because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

279.    The June 4, 2024 at 20:38:16 UTC access and subsequent transfer of ₿0.5 was not authorized by Athena.

280.    As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

281.    Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

282.    As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

283.    Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

## COUNT X
## Violation of the Computer Fraud and Abuse Act

284.     Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

285.     On June 4, 2024 at 20:38:38 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

286.     Athena Bitcoin, Inc., is a financial institution.

287.     Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B) because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

288.     The June 4, 2024 at 20:38:38 UTC access and subsequent transfer of ₿0.1 was not authorized by Athena.

289.     As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.1, which had a cash value of approximately $6,880.45 USD at the time of transfer.

290.     Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen ₿0.1, which had a cash value of approximately $6,880.45 USD at the time of transfer.

291.     As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole

following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

292.     Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

## COUNT XI
### Violation of the Computer Fraud and Abuse Act

293.     Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

294.     On June 4, 2024 at 20:38:41 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

295.     Athena Bitcoin, Inc., is a financial institution.

296.     Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B) because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

297.     The June 4, 2024 at 20:38:41 UTC access and subsequent transfer of ₿0.1 was not authorized by Athena.

298.     As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.1, which had a cash value of approximately $6,880.45 USD at the time of transfer.

299. Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen ฿0.1, which had a cash value of approximately $6,880.45 USD at the time of transfer.

300. As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

301. Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

## COUNT XII
### Violation of the Computer Fraud and Abuse Act

302. Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

303. On June 4, 2024 at 20:52:27 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

304. Athena Bitcoin, Inc., is a financial institution.

305. Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B)

because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

306.     The June 4, 2024 at 20:52:27 UTC access and subsequent transfer of ₿0.5 was not authorized by Athena.

307.     As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

308.     Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

309.     As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

310.     Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

## COUNT XIII
### Violation of the Computer Fraud and Abuse Act

311.    Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

312.    On June 4, 2024 at 20:52:49 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

313.    Athena Bitcoin, Inc., is a financial institution.

314.    Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B) because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

315.    The June 4, 2024 at 20:52:49 UTC access and subsequent transfer of ₿0.5 was not authorized by Athena.

316.    As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

317.    Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

318.    As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole

following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

319.    Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

<u>**COUNT XIV**</u>
**Violation of the Computer Fraud and Abuse Act**

320.    Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

321.    On June 4, 2024 at 20:53:13 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

322.    Athena Bitcoin, Inc., is a financial institution.

323.    Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B) because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" <u>Id.</u>

324.    The June 4, 2024 at 20:53:13 UTC access and subsequent transfer of ₿0.5 was not authorized by Athena.

325.    As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

326.     Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen Ƀ0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

327.     As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

328.     Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

**COUNT XV**
**Violation of the Computer Fraud and Abuse Act**

329.     Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

330.     On June 4, 2024 at 21:02:33 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

331.     Athena Bitcoin, Inc., is a financial institution.

332.     Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B)

because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

333. The June 4, 2024 at 21:02:33 UTC access and subsequent transfer of ₿0.5 was not authorized by Athena.

334. As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

335. Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

336. As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

337. Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

## COUNT XVI
## Violation of the Computer Fraud and Abuse Act

338.     Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

339.     On June 4, 2024 at 21:02:53 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

340.     Athena Bitcoin, Inc., is a financial institution.

341.     Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B) because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

342.     The June 4, 2024 at 21:02:53 UTC access and subsequent transfer of ₿0.5 was not authorized by Athena.

343.     As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

344.     Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

345.     As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole

following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

346.    Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

## COUNT XVII
### Violation of the Computer Fraud and Abuse Act

347.    Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

348.    On June 4, 2024 at 21:03:06 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

349.    Athena Bitcoin, Inc., is a financial institution.

350.    Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B) because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

351.    The June 4, 2024 at 21:03:06 UTC access and subsequent transfer of ₿0.5 was not authorized by Athena.

352.    As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

353.     Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen ₿0.5, which had a cash value of approximately \$34,402.28 USD at the time of transfer.

354.     As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

355.     Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

## COUNT XVIII
### Violation of the Computer Fraud and Abuse Act

356.     Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

357.     On June 4, 2024 at 21:03:09 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

358.     Athena Bitcoin, Inc., is a financial institution.

359.     Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B)

because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

360. The June 4, 2024 at 21:03:09 UTC access and subsequent transfer of ₿0.5 was not authorized by Athena.

361. As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

362. Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

363. As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

364. Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

## COUNT XIX
## Violation of the Computer Fraud and Abuse Act

365.    Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

366.    On June 4, 2024 at 21:03:12 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

367.    Athena Bitcoin, Inc., is a financial institution.

368.    Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B) because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

369.    The June 4, 2024 at 21:03:12 UTC access and subsequent transfer of ₿0.5 was not authorized by Athena.

370.    As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

371.    Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

372.    As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole

following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

373.    Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

## COUNT XX
### Violation of the Computer Fraud and Abuse Act

374.    Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

375.    On June 4, 2024 at 21:03:14 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

376.    Athena Bitcoin, Inc., is a financial institution.

377.    Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B) because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

378.    The June 4, 2024 at 21:03:14 UTC access and subsequent transfer of ₿0.5 was not authorized by Athena.

379.    As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

380.    Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen Ƀ0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

381.    As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

382.    Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

## COUNT XXI
### Violation of the Computer Fraud and Abuse Act

383.    Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

384.    On June 4, 2024 at 21:36:55 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

385.    Athena Bitcoin, Inc., is a financial institution.

386.    Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B)

because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

387.    The June 4, 2024 at 21:36:55 UTC access and subsequent transfer of ₿0.5 was not authorized by Athena.

388.    As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

389.    Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

390.    As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

391.    Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

## Count XXII
### Violation of the Computer Fraud and Abuse Act

392.     Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

393.     On June 4, 2024 at 21:37:29 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

394.     Athena Bitcoin, Inc., is a financial institution.

395.     Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B) because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

396.     The June 4, 2024 at 21:37:29 UTC access and subsequent transfer of ₿0.5 was not authorized by Athena.

397.     As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

398.     Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

399.     As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole

following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

400.     Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

<u>**Count XXIII**</u>
**Violation of the Computer Fraud and Abuse Act**

401.     Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

402.     On June 4, 2024 at 21:37:56 UTC, Neil Hernandez, at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally accessed Athena's Entropy Software account and the associated Bitcoin wallet for an unlawfully purpose and without prior authorization.

403.     Athena Bitcoin, Inc., is a financial institution.

404.     Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B) because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" <u>Id.</u>

405.     The June 4, 2024 at 21:37:56 UTC access and subsequent transfer of ₿0.5 was not authorized by Athena.

406.     As a result, Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., intentionally deprived Athena of its property, ₿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

407.    Thereafter, Andrew Barnard and Genesis Bitcoin, Inc. attempted to extort cash payments from Athena in exchange for Genesis returning the stolen ฿0.5, which had a cash value of approximately $34,402.28 USD at the time of transfer.

408.    As a result of Defendants Neil Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., theft of its property Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

409.    Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account and the associated Bitcoin wallet, stole Athena's Bitcoin, and Athena was damaged by the same.

**COUNT XXIV**
**Violation of the Computer Fraud and Abuse Act**

410.    Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

411.    On or about June 4, 2024, Niel Hernandez at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., accessed Athena's Entropy Software account and the associated Bitcoin wallet.

412.    Athena Bitcoin, Inc., is a financial institution.

413.    Athena's Entropy Software account and the associated Bitcoin wallet are protected computers, as defined by Computer Fraud and Abuse Act, at 18 U.S.C. §§ 1030(e)(2)(A), (B) because, they are used by a financial institution and they are "used in or affecting interstate or foreign commerce[.]" Id.

414. On or about June 4, 2024, Niel Hernandez at the direction of Andrew Barnard and Doug Carrillo and on behalf of Genesis Coin, Inc., intentionally locked Athena out of its Entropy Software account and the associated Bitcoin wallet and illegally stole and/or interfered with its transaction, customer, and compliance data.

415. Thereafter, Andrew Barnard and Genesis attempted to extort cash payments from Athena in exchange for Genesis restoring Athena's access to its Entropy Software account, the associated Bitcoin wallet, and the return of Athena's Data.

416. As a result of Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., denying Athena access to its Entropy Software account, the associated Bitcoin wallet and its Data, Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin and the theft and/or interference with Athena's Data.

417. Defendants Niel Hernandez, Andrew Barnard, Doug Carrillo, and Genesis Coin, Inc., violated the Computer Fraud and Abuse Act of 1986's Section 1030(a)(2)(A), (a)(4), (a)(5)(B)-(C), and (a)(7)(A) and (C) when they intentionally and without authorization accessed Athena's Entropy Software account, the Data, and the associated Bitcoin wallet, blocked Athena's access to the same, and Athena was damaged.

## COUNT XXV
### Tortious Interference with Numerous Contracts

418. Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

419. Each of Athena's ATMs offer a unilateral contract whereby any member of the public can accept Athena's offer to sell them Bitcoin by depositing money into an Athena ATM.

420.     When customers BW, WH, KD, RC, and AH deposited cash into Athena's ATMs they accepted Athena's offer to sell Bitcoin and thereby created valid and enforceable contracts for the purchase and sale of Bitcoin.

421.     Each customers' transaction is a separate and unique acceptance of Athena's offer to sell the customer Bitcoin and therefore each transaction is a separate contract.

422.     Defendants knew of the existence of these contracts because they sold, maintained, and updated the Entropy Software which operated Athena's ATMs and executed the contracts for the sale of Bitcoin.

423.     Defendants intentionally interfered with Athena's contracts for the sale of Bitcoin to its clients when they unlawfully stole its Bitcoin and unlawfully interfered with its access to the Entropy Software rendering it unable to satisfy its contractual obligations to its clients.

424.     Defendants intentionally interfered with Athena's contracts for the sale of Bitcoin to its clients and damaged Athena's clients because said clients deposited cash into Athena's ATMs but were not given their purchased Bitcoin.

425.     Athena's clients incurred damages as a result of Defendants intentional interference with the contracts for the purchase and sale of Bitcoin in the form of the deprivation of property, the time and expense of having Athena fulfil its contractual obligations, and other damages suffered as a result of clients being deprived of their assets.

426.     As a result of Defendants' intentional interference with Athena's contracts for the sale of Bitcoin to its clients, Athena incurred damages from its inability to fulfil its contractual obligations to its customers, expenses incurred to make its customers whole following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of this tortious interference.

427.    Defendants tortiously interfered with hundreds of separate contracts for the sale of Bitcoin to its clients when Defendants unlawfully stole Athena's Bitcoin and unlawfully interfered with its access to the Entropy Software rendering it unable to satisfy its contractual obligations to its clients.

## COUNT XXVI
### Civil Conspiracy

428.    Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

429.    Upon discovering Athena was attempting to leave the Entropy Software platform, Defendants Genesis Coin, Inc., Bitcoin ATM, LLC, ATM OPS, Inc., and Kiosk Distributors, Inc., along with Andrew C. Barnard, Douglas O. Carrillo, and Neil Hernandez colluded to steal Athena's Bitcoin and force it to surrender its ATMs and a substantial portion of its business to Genesis, Bitcoin ATM, and Bitstop.

430.    Defendants Genesis Coin, Inc., Bitcoin ATM, LLC, ATM OPS, Inc., and Kiosk Distributors, Inc. had an agreement to fraudulently deprive Athena of its assets and business.

431.    Defendant Genesis Coin, Inc., took significant steps to deprive Athena of its assets and business.

432.    Specifically, Genesis unlawfully stole Athena's Bitcoin, denied it access to the Entropy Software, stole and/or interfered with Athena's Data, and attempted to extort large amounts of cash and assets from Athena, specifically Athena's Bitcoin ATMs or a cash payment of $1.5 million.

433.    Defendants engaged in a civil conspiracy to steal Athena's assets and force it to surrender its business.

## COUNT XXVII
### Breach of Contract

434.     Plaintiff incorporates the above paragraphs by reference as if fully set forth herein.

435.     The October 1, 2015 Purchase and Sale Agreement with Genesis Coin, Inc. by and between Athena Bitcoin, Inc. and Genesis Coin, Inc., is a valid and enforceable contract.

436.     The Agreement grants Athena a limited, nonexclusive license to use the Entropy Software and defines the term of use of the Entropy Software as "for as long as [Athena] retains full legal right and title to operate the [Kiosks]." Ex. A, Agreement, § 7(C).

437.     The Oral Purchase And Sale Agreement Between Genesis Coin Inc. And Athena Bitcoin, Inc., extended the terms of the Agreement indefinitely, expanded them to include the purchase and sale of all Kiosks sold by Genesis to Athena, and is a valid and enforceable contract.

438.     At all relevant times, Athena performed its obligations under the Agreement and the Oral Agreement.

439.     At all relevant times, Athena promptly paid the License Fee to Genesis.  Such fee was equal to one percent (1%) of the value of all transactions processed by Athena, and such fees were assessed in Bitcoin and automatically deducted and transferred to Genesis.

440.     Defendant Genesis breached both the October 1, 2015 Purchase and Sale Agreement with Genesis Coin, Inc. and Oral Purchase And Sale Agreement Between Genesis Coin Inc. And Athena Bitcoin, Inc., when it unlawfully terminated Athena's access to the Entropy Software and stole and/or interfered with Athena's Data.

441.     Defendant Genesis breached both the October 1, 2015 Purchase and Sale Agreement with Genesis Coin, Inc. and Oral Purchase And Sale Agreement Between Genesis Coin Inc. And Athena Bitcoin, Inc., when it raised the License Fee from to one percent (1%) of the value

of all transactions processed by Athena to one and one quarter percent (1.25%) of the value of all transactions processed by Athena.

442. As a result of Defendant Genesis Coin, Inc.'s Breach of Contract, Athena incurred damages from the loss of its property, the inability to fulfil its obligations to its customers, expenses incurred to make its customers whole following their attempted purchase of Bitcoin, technology expenses incurred, and legal fees and costs as a result of Genesis's theft of its Bitcoin.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Athena Bitcoin, Inc., respectfully requests that the Court find:

a)      For preliminary and permanent injunctive relief, pursuant to Fed. R. Civ. P. 65, to prevent Defendants from curtailing Athena's access to its Entropy Software account, including both platform and API access, and the associated Bitcoin wallet;

b)      Any damages proximately caused by the wrongful denial access pursuant to the above causes of action that permit damages;

c)      All damages from the theft, misappropriation, and extortion caused by the actions of Defendants in an amount of not less than $5,000,000.00.

d)      Athena Bitcoin's attorney's fees and costs incurred in pursuing these claims as permitted by law or contract; and

e)      For such other and further relief as the Court deems just and proper.

Dated: July 16, 2024                          Respectfully Submitted:

By: _____

Adam Florek
**Florek Law, LLC**
11 Knollwood Dr.
North Caldwell, New Jersey 07006
Tel: (929) 229-2268
E-mail: aflorek@florekllc.com